## UNITED STATES, Plaintiff,
## v.
## TODD JAY ROBLING, Defendant

Crim. No. 1999-086

District Court of the Virgin Islands

Div. of St. Thomas and St. John

September 29, 1999

NELSON JONES, ASST. U.S. ATTORNEY, St. Thomas, U.S.V.I., *for plaintiff*

STEPHEN A. BRUSCH, ESQ., St. Thomas, U.S.V.I., *for defendant*

MOORE, *Judge*

**MEMORANDUM**

This matter came before the Court for oral argument on Todd Robling's ["Robling" or "defendant"] motion to suppress any physical evidence including but not limited to marijuana plants seized by law enforcement officers and to suppress any statements of the defendant. The following memorializes the Court's ruling from the bench denying the motion at the end of the hearing.

## I. FACTUAL BACKGROUND

From the parties' pleadings and from the testimony and evidence presented at the hearing, the following is the Court's understanding of the facts and events leading up to Robling's arrest and the seizure of the physical evidence. On or about April 21, 1999, a retired police officer of the Virgin Islands Police Department notified the High Intensity Drug Trafficking Area Task Force ["HIDTA"] that she had discovered a patch of marijuana growing on her property. HIDTA officers went to the property to investigate and found over fifty marijuana plants growing on the officer's property. The HIDTA officers also found a worn path leading from the marijuana plants to the adjacent piece of property. The officers saw what they believed to be more marijuana plants right outside the back of the house next door and set up a surveillance of that house. After several hours, the officers saw Robling come out the back door several times and appear to prune the marijuana plants at the back of the house.

While the officers maintained surveillance of the back of the adjacent house, HIDTA sent officers to approach the front door of the house. As officers approached the front door and announced their presence, Robling bolted out of the back door of the house and appeared to be attempting to destroy the marijuana plants. The surveilling officers converged on the defendant from the neighboring property with their weapons drawn and ordered him to get down on the ground. After the defendant complied, the officers handcuffed him and placed him under arrest. A person, later identified as the defendant's wife, came out of the back door and the officers also ordered her to get down on the ground, although they did not handcuff or place her under arrest. When the officers realized that there were children in the house who also had

come to the back door, they allowed Robling's wife to accompany the children back into the house. The officers conducted a protective sweep to insure their safety either immediately before allowing the defendant's wife to go back in or simultaneously with her reentry into the house.

The officers then took Robling into the house, read him his rights, which he waived in writing. The defendant then led the officers through the house, showed them many more plants and several items related to illegal drug activity, and took them to a downstairs apartment containing more marijuana plants. The officers seized all the plants and related paraphernalia as evidence.

## II. DISCUSSION

Robling claimed that his waiver of rights was involuntary. He contended that the officers deprived him of food and water for an extended period of time and used threats of arresting his wife to coerce him into signing the advice of rights form. He also maintained that he repeatedly requested an attorney, which the officers ignored. Robling argued that his statements must be suppressed, and that all evidence obtained from the search must be suppressed because the search of his house was in violation of the Fourth Amendment.[1]

■ Whether Robling voluntarily waived his rights came down to the credibility of Robling and his wife versus the officers involved. After examining the credibility of the witnesses, the Court found the testimony of the officers to be more credible than that of Robling or his wife. The officers testified that the defendant was properly advised of his rights and that he never asked for an attorney to be present. They also denied Robling's accusations that they deprived him of food and water. Accordingly, the Court found that Robling voluntarily waived his rights and, therefore, his statements to the arresting officers are admissible.

■ The officers went through the house twice. The first time right after Robling was arrested, as a lawful protective sweep

---

[1] The Fourth Amendment has been made applicable to the Virgin Islands pursuant to the Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, as amended by Pub. L. 90-496, § 11, 82 Stat. 841 (Aug. 23, 1968).

incident to arrest, according to the government. As a general rule, the sanctity of a person's home requires law enforcement officers to establish probable cause and obtain a warrant before they can enter a house. There are, however, certain limited exceptions to this requirement.

■ In *Maryand v. Buie*, the Supreme Court found that law enforcement officers "could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be launched." 494 U.S. 325, 334, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990). This type of "protective sweep" survives a Fourth Amendment challenge if the prosecution can demonstrate "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* The reasonableness of the officer's belief that he and others on the arrest scene may be in danger must be assessed from the surrounding circumstances and the nature of the criminal conduct involved. Since experience has demonstrated that firearms and drugs go together, an arrest for illegal drug activity supports the reasonableness of an officer's belief that a warrantless protective sweep was necessary. The police officers here had just arrested Robling for illegal drug activity, after watching him run out the back door and try to destroy evidence when he realized officers were approaching his front door. Moreover, a woman had come out while the officers were arresting the defendant. The officers thus had reason to believe that more associates of the defendant involved in the drug activity with firearms might be in the house. Buie and its progeny allow a protective sweep in such circumstances based on the reasonable possibility of danger posed to the officers by an accomplice who could be lurking in the house.

■ Although *Buie* arose from the arrest of a defendant while inside the home, its rationale applies equally to an arrest made within a few feet of the back door to the defendant's house. The danger from an accomplice in the house was no less to officers standing outside the back door out of which the defendant just

443

bolted, than it would have been to officers in the house. "A bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another." *United States v. Hoyos*, 892 F.2d 1387, 1397 (9th Cir. 1989). Accordingly, the Court found that the warrantless protective sweep of the defendant's house fell within the *Buie* exception. Based on the testimony of the officers and the facts presented at the hearing, the Court found that the officers at the scene reasonably perceived a danger from inside the home, which justified the protective sweep of the rooms of the house. The officers did not actually search the house for evidence until Robling had signed the waiver of rights form and had consented to the second walk through and search of his home. Robling accompanied the officers around the house and showed them where illegal drug materials were located. He even led the officers to a separate, locked apartment below the main dwelling area of the house.[2] Robling, with his key, admitted the officers to the apartment, where they found more marijuana plants and evidence that Robling was cultivating the plants. The officers seized as evidence all of the illegal items which they found.

 As discussed previously, Robling's waiver of his rights when he signed the advice of rights form was voluntary. Robling's subsequent consent to the search of his house was similarly voluntary. The Court found the testimony of the officers simply more credible than that of the Roblings and found no indication of coercion or other improper activity by the officers involved. Consequently, the Court did not suppress the physical evidence obtained as a result of the lawful search of Robling's residence.

## III. CONCLUSION

For the reasons recited from the bench, as supplemented by the discussion above, the Court ruled that Robling knowingly and voluntarily waived his rights when he made a statement to the arresting officers. Robling likewise voluntarily consented to the search of his residence which resulted in the seizure of physical

---

[2] Robling testified that the apartment is part of the main house and he and his wife pay rent for the entire house including the apartment.

evidence of illegal drug activity. Accordingly, the Court denied Robling's motion to suppress. An appropriate order is attached.

## ORDER

For the reasons set forth in the accompanying memorandum of even date, it is hereby

ORDERED that the defendant's motion to suppress is DENIED.

ENTERED this 29th day of September, 1999.